**ORIGINAL**

FOR PUBLICATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW HORVAY,

        Petitioner,

-v-                                      No. 04 Civ. 4146 (LTS)(HBP)
                                          No. 02 Crim. 350 (LTS)

UNITED STATES OF AMERICA,

        Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/22/06

OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| MATTHEW HORVAY<br>F.C.I. Fort Dix<br>P.O. Box 2000<br>Fort Dix, NJ 08640-0902 | MICHAEL GARCIA, UNITED STATES<br>ATTORNEY FOR THE SOUTHERN<br>DISTRICT OF NEW YORK<br>  By: Joshua A. Goldberg, AUSA<br>One Saint Andrew's Plaza<br>New York, NY 10007 |
| *Petitioner Pro Se* | *Attorney for Respondent* |

LAURA TAYLOR SWAIN, United States District Judge

Copies mailed Pro Se Petitioner,
Chambers of Judge Swain Gov., Def.
Counsel 5/22/06

Petitioner Matthew Horvay ("Petitioner" or "Horvay"), who was convicted upon a plea of guilty to a charge of transmission of child pornography in violation of 18 U.S.C. § 2252A(a)(1) and who is serving a sentence of 87 months of imprisonment, moves pro se, pursuant to 28 U.S.C. § 2255,[1] to vacate, set aside, or correct the sentence. The Court has thoroughly reviewed the parties' submissions in connection with Petitioner's Section 2255 motion, including Petitioner's Amended Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255; Petitioner's Supplemental Argument to § 2255 Application; the Government's Memorandum of Law in Opposition to Petitioner-Defendant Matthew Horvay's Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255; and Petitioner's Traverse to the Government's Opposition. For the following reasons, Petitioner's motion is denied in its entirety.

## BACKGROUND

Petitioner was arrested on November 19, 2001, in Massachusetts and was released, after surrendering in this District, on a personal recognizance bond and subject to home detention with electronic monitoring. On March 28, 2002, Petitioner was charged in a one-count indictment with transmitting computer files that contained images of child pornography in violation of 18 U.S.C. § 2252A(a)(1). On May 24, 2002, Petitioner plead guilty to the

---

[1] Under 28 U.S.C. § 2255, "[a] prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . may move the court . . . to vacate, set aside or correct the sentence." 28 U.S.C.A. § 2255 (West 2006).

indictment, pursuant to a plea agreement. On May 30, 2002, Petitioner's bail conditions were modified to allow him to enter a residential sex offender treatment program at Alpha Human Services in Minneapolis, Minnesota. On April 22, 2003, Horvay was sentenced principally to a term of imprisonment of 87 months. Petitioner's plea agreement included a waiver of rights to appeal or otherwise litigate the sentence that was imposed, and Petitioner did not appeal from the judgment of conviction.

In his opening papers on this Section 2255 motion, Horvay argues that, notwithstanding the procedural default arising from his failure to appeal, he is entitled to relief from his sentence on the grounds that he received ineffective assistance of counsel because (1) the Supreme Court's decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), a case that was decided prior to the entry of Horvay's guilty plea, rendered unconstitutional the basis of his prosecution, (2) his attorney failed to communicate to him the correct burden of proof in his case in connection with his guilty plea, and (3) his attorney failed to present "the full departure argument" in connection with sentencing. Horvay also challenges his sentence pursuant to Blakely v. Washington, 124 S. Ct. 2531 (2004), arguing that the application of Sentencing Guidelines enhancements in his case was rendered unconstitutional by that decision. (See Movant's Am. Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Fed. Custody ("Mot.") at 4 and also Petitioner's Supplemental Argument to § 2255 Application ("Suppl. Arg.") at 1.)

In his plea agreement with the Government, Horvay agreed to "neither appeal, nor otherwise litigate under . . . Section 2255 . . . any sentence within or below the Stipulated Guidelines Range. . . ." Plea Agreement at p. 4. Liberally construing pro se petitioner's

conviction-related ineffective assistance of counsel arguments as an attack on both the validity of his conviction and the voluntariness of his plea, the Court will address the merits of his arguments.

## DISCUSSION

Ineffective Assistance of Counsel Claims

The Sixth Amendment to the Constitution of the United States affords the defendant "[i]n all criminal prosecutions . . . the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. To demonstrate ineffective assistance of counsel, Petitioner must normally show both "that the attorney's performance fell below an objective standard of reasonableness and that the outcome of his case would have been different had the attorney performed adequately." Fountain v. United States, 357 F.3d 250, 254 (2d Cir. 2004) (quoting United States v. Perez, 129 F.3d 255, 261 (2d Cir. 1997)). Proof of such deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). However, "[a] court need not address both components of an ineffective assistance inquiry if a petitioner fails to make a sufficient showing on one." Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted). Where, as here, a conviction based on a guilty plea is being challenged on ineffective assistance of counsel grounds, in order to meet the prejudice prong of the Strickland analysis, the petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The court "inquires into the record as a whole to determine

whether a reasonable probability exists that absent counsel's error, the outcome of the proceeding would have been different." U.S. v. Arteca, 411 F.3d 315, 321 (2d Cir. 2005).

### Claims Regarding Burden of Proof

*Argument that Conviction was Unconstitutional*

Petitioner was convicted on the basis of his plea of guilty to Count One of the indictment in this case, which charged that:

> From at least in or about February 2001, up to and including in or about October 2001, in the Southern District of New York and elsewhere, MATTHEW HORVAY, a/k/a "IndstGoth," the defendant, unlawfully, wilfully and knowingly mailed, and transported and shipped in interstate and foreign commerce by any means, including by computer, child pornography, to wit, computer files containing images of child pornography. (Title 18, United States Code, Section 2252A(a)(1)).

Indictment.

In the course of the plea allocution procedure, the Government explained, and Horvay acknowledged before pleading guilty, that in the absence of a guilty plea the Government would have to prove beyond a reasonable doubt:

> First, that the defendant knowingly and willfully received or distributed material that was or contained child pornography;
> Second, that the defendant knew that the materials included images of minors, which means persons under the age of 18 years old;
> Third, that the defendant knew that the materials included images of the minors engaged in sexually explicit conduct;
> And fourth, that the material was mailed or shipped or transported in interstate or foreign commerce by any means, including by a computer.

Transcript of May 24, 2002, Plea Allocution ("Plea Tr.") at 10-11.

In his plea agreement, Petitioner stipulated, <u>inter alia</u>, that "the material involved prepubescent minors and minors under the age of twelve years" and that "the defendant engaged

in a pattern of activity involving the sexual abuse and sexual exploitation of a minor." Plea agreement dated May 24, 2002, at 2. In his plea allocution, he acknowledged under oath his understanding of the elements of the charged crime and of the stipulations in his plea agreement, and testified that he was guilty of the charged crime because he "transmitted pictures depicting sexually – minors in sexually explicit situations over the Internet via computer" and that, when he transmitted the pictures, he knew their content and that they contained images of minors. He further acknowledged that he had knowingly and willfully transmitted the material. Plea Tr. 19-20.

In the course of the allocution and prior to the tender and acceptance of Petitioner's plea, the Government represented that its evidentiary proffer would include evidence that Petitioner had transmitted at least 33 images showing "minors engaged in explicit sexual conduct," including "prepubescent minors and minors under the age of 12." The Government also represented that it would show from Internet "chat session" transcripts "and also from the file names of the images, that Mr. Horvay knew that the pictures depicted minors and also depicted those minors in sexually explicit conduct," and that it would show that, during a court-ordered search of Mr. Horvay's residence and computer, government agents "found over 500 additional images of child pornography, including sexually explicit pictures of children and toddlers, at least some of whom were under the age of, we would estimate five years old." Petitioner tendered his guilty plea following this proffer. Plea Tr. 21-22.

At the time that Petitioner was indicted, and when Petitioner plead guilty to Count One, the relevant statute defined "child pornography" to encompass visual depictions ("including any photograph, . . . picture, or computer or computer-generated image or picture, whether made

or produced by electronic, mechanical or other means") of sexually explicit conduct, where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct" (18 U.S.C. § 2256(8)(A)), as well as three other categories of prohibited speech. Section 2256(8)(B) prohibited "'any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture,' that 'is, or appears to be, of a minor engaging in sexually explicit conduct." That section "capture[d] a range of depictions, sometimes called 'virtual child pornography,' which include computer-generated images, as well as images produced by more traditional means.'" Free Speech Coalition, 535 U.S. at 241 (quoting 18 U.S.C. § 2256(8)(B) as then promulgated[2]). Subsection (C) of the statute "prohibits a more common and lower tech means of creating virtual images, known as computer morphing," which involves alteration of "innocent pictures of real children so that the children appear to be engaged in sexual activity." Id. Subsection (D) of the statute "define[d] child pornography to include any sexually explicit image that was 'advertised, promoted, presented, described, or distributed in such a manner that conveys the impression' it depict[ed] 'a minor engaged in sexually explicit conduct.'" Id. (quoting 18 U.S.C. § 2256(8)(D) as then promulgated[3]).

In Free Speech Coalition, the Supreme Court struck down the "appears to be" language of subsection 2256(8)(B) and the "conveys the impression" premise of section

---

[2] Section 2256(8)(B) was amended in 2003, following the Free Speech Coalition decision, to read: "such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct." 18 U.S.C.A. § 2256(8)(B) (West 2006).

[3] Section 2256(8)(D) was repealed in 2003.

2256(8)(D) as unconstitutionally overbroad and thus violative of the First Amendment. Petitioner's papers, which are not a model of clarity, appear principally to assert that counsel's performance in connection with his conviction was ineffective because counsel failed to advise him, and argue to the Court, that the Supreme Court's decision in Free Speech Coalition so narrowed the constitutionally valid predicate for child pornography prosecutions as to render his own conviction invalid for lack of extrinsic proof that the images found on his computer were of actual minors and did not involve any form whatsoever of computer alteration or "morphing." According to Petitioner, his counsel advised him that he would have had to prove that the images were not of real children had the case gone to trial. Petitioner further contends in this connection that he was explicitly charged under the "appears to be" provision of former section 2256(8)(B) and that 18 U.S.C. Section 2252A, the statute cited in the Indictment, has been "found void," thus depriving the Court of jurisdiction to convict him of a crime.

Petitioner fails to satisfy the "prejudice" prong of his Strickland argument because he misstates the facts relating to his prosecution and because his interpretation of the impact of Free Speech Coalition is erroneous. Thus, even if he could prove that his attorney advised him that he would have to prove that the images in question were not ones of real children and that such advice "fell below an objective standard of reasonableness," he cannot establish that the outcome of the proceeding would have been different had counsel given the advice, and made the legal arguments, here advanced by Petitioner. See Arteca, 411 F.3d at 321.[4]

---

[4] It should be noted in this connection that Section 2252A of Title 18 has at all relevant times provided that a person accused of violating subsection 2252A(a)(1) can assert as an affirmative defense that the alleged child pornography was made using only adults. 18 U.S.C. § 2252A(c) (as in effect from October 30, 1998 to November 1, 2002) (available on Westlaw as Pub. L. No. 105-314, Title II, §§

As to Petitioner's argument based on the language of the indictment, that instrument charged him with transmitting "images of child pornography." The language of the indictment was not limited to such images "appear[ing] to be" of children engaging in sexual activity or any other narrower aspect of the statutory definition of pornography. The Government's acknowledgment as to its burden of proof and as to the nature of its evidence also made clear that the prosecution was brought and pursued on the basis that Horvay had illegally transmitted images of "persons" under the age of 18, some of them toddlers. Horvay's own allocution was also consistent with this view of the prosecution – he allocuted not to having dealt with images that "appeared" to be of minors, but to having transmitted pornographic images of "minors." Thus, any argument that his prosecution was rendered unconstitutional by the Free Speech Coalition holding regarding the overbreadth of the "appears to be" language of the former statute would not have defeated the charge.

Petitioner also appears to argue that Free Speech Coalition held unconstitutional subsection 2256(8)(C), relating to "morphed" images[5] of real children, such that he would have been able to prevail at a trial had he been able to demonstrate that the images on his computer were the product of morphing. See Traverse at 9-10, see also Affidavit of Roderick A.

---

202(b), 203(b), 1998 U.S.S.C.A.N. (112 Stat. 2978)). Petitioner's ability to meet the reasonableness prong of the Strickland analysis is thus doubtful as well, though the Court need not reach that issue. See Rompilla, 125 S.Ct. at 2462 ("A court need not address both components of an ineffective assistance inquiry if a petitioner fails to make a sufficient showing on one.") (citations omitted).

[5] See Free Speech Coalition, 535 U.S. at 242, noting that "Section 2256(8)(C) [of the CPPA] prohibits a more common and lower tech means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity."

Campbell. Here, Petitioner misstates the law. The morphed-image element of the definition of child pornography was not challenged in Free Speech Coalition and, although the Court therefore did not address its constitutionality in that opinion, it did note that morphed images of real children "implicat[e] the interests of real children and are in that sense closer to" the types of child pornography that were held to be outside of the scope of the First Amendment by the Court's decision in New York v. Ferber, 458 U.S. 747 (1982), a decision whose rationale the Free Speech Coalition decision reinforced. Free Speech Coalition, 535 U.S. at 242. Thus, Petitioner could not successfully have argued that the prosecution was unconstitutional under Free Speech Coalition even if some or all of the images relied upon by the Government were the product of morphing.

Petitioner also appears to interpret Free Speech Coalition as requiring extrinsic evidence of the use of real children to support a conviction under the "use of a minor engaging in sexually explicit conduct" prong of the statutory definition of child pornography. He cites no authority for this proposition and, indeed, simply argues that circuit and other district court case law holding to the contrary is wrongly decided. See Traverse at 9. It is well established that circumstantial evidence is as firm a basis for a jury determination as direct evidence. As the Second Circuit recently held, "[a]lthough the Supreme Court noted the possible evidentiary difficulty of distinguishing virtual and actual child pornography [in Free Speech Coalition], it did not establish a bright-line rule requiring that the government proffer a specific type of proof to show the use of an actual child." U.S. v. Irving, 432 F.3d 401, 411 (2d Cir. 2005). See also U.S. v. Deaton, 328 F.3d 454, 455 (8th Cir. 2003) (reaffirming, in a post-Free Speech Coalition context, that "we have previously upheld a jury's conclusion that real children were depicted even

where the images themselves were the only evidence the government presented on the subject")
(cited in Irving, 432 F.3d at 411). Petitioner thus again fails to demonstrate that he could, with
the effective assistance of counsel, have succeeded in establishing that he could not
constitutionally have been convicted of the charge against him. The foregoing review of the
record and the law demonstrates that Petitioner cannot make the requisite showing "that there is a
reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would
have insisted on going to trial." See Hill, 474 U.S. at 59.

### Voluntariness of Plea

Bearing in mind its obligation to construe liberally the submissions of pro se
litigants, the Court has also considered whether Petitioner's allegation concerning the advice
given by trial counsel could support a finding that his guilty plea was involuntary and, thus, that
the ineffective assistance of counsel warrants relief from his conviction. To the extent that
Horvay's motion could be construed as an argument that his plea was "involuntary" as a result of
ineffective assistance of counsel because his attorney supplied him with erroneous information
about the burden of proof, that argument similarly fails. "A guilty plea is constitutionally valid
only to the extent it is 'voluntary' and 'intelligent.' " Bousley v. U.S., 523 U.S. 614, 618 (1998)
(quoting Brady v. United States, 397 U.S. 742, 748 (1970)). "A plea does not qualify as
voluntary and intelligent unless the defendant: (1) was informed of the nature of the charges
against him and all direct consequences of his plea; and (2) understood the constitutional rights
that he was waiving by entering a guilty plea." U.S. v. Oakes, 411 F.Supp.2d 1, 4 (D. Me. 2006).
As noted above, where, as here, a conviction based on a guilty plea is being challenged on

ineffective assistance of counsel grounds, the petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Because Horvay never asserts that he would not have plead guilty but for his attorney's alleged misinformation, and the record could not support such a conclusion, he is unable to sustain his burden under Hill.

Moreover, Petitioner's mere misperception of the strength of the Government's case would not have rendered his plea unknowing or involuntary, as in his plea allocution he acknowledged not only his guilt but also conduct specifically violative of valid provisions of the statute under which he was charged. In Oakes, a district court was asked to determine whether or not a petitioner was prejudiced when he claimed that "he would not have pled guilty if he had known that the government would be required to prove that the children depicted in the images were actual children." Id. at 3. In holding that the petitioner had not made the requisite showing of prejudice, the court noted that:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . . . Under the voluntary and intelligent standard, a plea of guilty is not invalid simply because the strength of the government's case may appear weaker than [Petitioner] thought at the time of the guilty plea. The Constitution does not require that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply

because it later develops that the State would have had a weaker case than the defendant thought.

Id. at 4 (internal quotation marks and citations omitted). The Oakes Court concluded that "although Free Speech Coalition narrowed the scope of the conduct that was illegal under the CPPA, the conduct to which [Petitioner] admitted engaging continued to be a crime under both of the remaining constitutional definitions of 'child pornography,'" id. at 5, and denied the petition.

Petitioner Horvay similarly admitted to having engaged in illegal conduct, and the Court finds persuasive the Oakes Court's reasoning. There, as here, the defendant had plead guilty to conduct that remained illegal even after Free Speech Coalition. There, as here, the defendant had been informed of the nature of the charges against him and all direct consequences of his plea and understood the constitutional rights that he was waiving by entering a guilty plea. Horvay's plea was knowing and voluntary, and he has not established that having the "correct" information about the burden of proof would have made a difference in the outcome of his case.

The Departure Argument

Prior to sentencing, Horvay moved for a downward departure based on "extraordinary rehabilitation" and, in particular, his post-guilty plea treatment at Alpha Human Services ("Alpha"), a private sex-offender treatment program. Horvay argues that his trial counsel "failed to address with the scope of motion required by the circumstances the cumulative nature of the request for downward departure." Pet'r's Mem. at 7. He asserts that it is "his considered belief that the composition of his reasons absolutely takes his case out of the heartland of similar cases not warranting downward departure." Id. at 5-6. He also argues that it

was error for counsel to not raise "diminished capacity" as a ground for a downward departure. Id. at 4. Horvay argues that:

> The fully expressed reason for granting a downward departure must turn on Mr. Horvay [sic] reaction to the agents' telephone call being to desist all illegal activity on his own, the extraordinary conditions and results to which Mr. Horvay submitted himself in order to correct his behavior, the mitigating depression and stress which strongly influenced his course of introverted behavior, and the penal nature of the conditions pretrial. While the individual reasons may be picked apart as reasons considered and rejected for departure relief by the Sentencing Commission (which is partially true and partially false), it was undisputable that they were present in severity together in this case in no way ever considered by the Commission and few if any courts. In short, Mr. Dratel failed to present the collective whole that was Mr. Horvay's sentencing condition.

Id. at 7.

To the extent that trial counsel failed to raise diminished capacity or any other grounds (other than extraordinary rehabilitation) as grounds for a downward departure, there is no basis for a finding of prejudice under the Hill and Strickland standards because Mr. Horvay had entered into a plea agreement with the Government that specifically prohibited him from seeking departures on other grounds.

Any argument that Mr. Horvay's counsel somehow failed to present completely his extraordinary rehabilitation departure motion is entirely inconsistent with the record. On the contrary, the motion was presented zealously and aggressively. Defense counsel investigated possible treatment centers around the country and facilitated Horvay's application to Alpha, where he "aggressively lobbied . . . so that [Horvay] would be admitted." Gov. Opp. at 19. Defense counsel successfully moved before the Court to amend Horvay's bail conditions so that he could enter Alpha. He successfully postponed Horvay's sentencing for over a year so that Horvay could continue with his rehabilitation in support of his downward departure claims. This Court held a hearing on April 22, 2003, where defense counsel brought in several witnesses,

including administrators at Alpha. Counsel cross-examined the Government's witness at that hearing. The Court finds that Mr. Dratel's performance in arguing the departure motion was well within an objective standard of reasonableness, and thus Petitioner has failed to establish a claim for ineffective assistance of counsel. To the extent Petitioner is challenging the validity of the Court's decision to deny the downward departure (see, for example, Petitioner's Traverse at 5, stating "[i]f the Court was using dated information as any basis to deny Mr. Horvay the rehabilitation departure, such use was error as a matter of law") and not merely the effectiveness of his counsel in presenting that motion, such a challenge is foreclosed by his plea agreement and is procedurally barred.

### Challenges Under Booker and Blakely

Finally, Petitioner proffers two challenges to his sentence that are foreclosed by recent Second Circuit decisions. First, in a supplemental argument to his motion, Petitioner challenges the constitutionality of his sentence under Blakely v. Washington, 542 U.S. 296 (2004), arguing that it is "illegal with respect to all enhancements." Supp. Arg. at 1. Second, in his traverse, Petitioner elaborates on his Blakely argument (asserting that "Blakely satisfied the retroactivity standard for a 'new rule'", Traverse at 15) and invokes United States v. Booker, 125 S. Ct. 738 (2005). Both arguments fail.

Petitioner knowingly and voluntarily waived his right to challenge his sentence both on appeal and collaterally on a § 2255 petition should he be sentenced at or below 87-108 months of imprisonment; he was sentenced to 87 months. As the Second Circuit held in United States v. Monsalve, 388 F.3d 71 (2d Cir. 2004), even in a post-Blakely context, "[w]aivers of

appellate rights are valid when they are entered into knowingly and intelligently, with the effective assistance of counsel." Id. at 73, citing United States v. Rosa, 123 F.3d 94, 97-98 (2d Cir. 1997). As discussed above, Horvay entered into his plea knowingly and voluntarily, and did so with the effective assistance of counsel.[6] Furthermore, Booker is not available on collateral attack. Guzman v. U.S., 404 F.3d 139 (2d Cir. 2005). Thus, Petitioner's arguments premised on Blakely and Booker are precluded.

CONCLUSION

Accordingly, Petitioner's motion pursuant to 28 U.S.C. § 2255 is denied. Petitioner may not appeal this order unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C.A. § 2253(c)(1) (West 2002). A certificate will be granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2) (West Supp. 2003); see generally United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability). The Court finds that Petitioner will not be able to sustain this burden. Thus, the Court declines to issue a certificate of appealability. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

---

[6] The Court directed Horvay's attention to this waiver provision during his plea allocution, asking him if he "underst[oo]d that under the plea agreement [he was] giving up or waiving [his] right to appeal or to litigate the sentence... if [he was sentenced] within or below guidelines range set forth in the plea agreement?" Mr. Horvay responded that he did understand. May 24, 2002 Plea Transcript at 19.

The Clerk of Court is respectfully requested to close this matter.

SO ORDERED.

Dated: New York, New York
May 22, 2006

_____
LAURA TAYLOR SWAIN
United States District Judge